IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAROL KUNSMAN,

   Plaintiff,

v.

METROPOLITAN DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY,

   Defendant.

CIVIL ACTION
NO. 17-4619

**MEMORANDUM**

SCHMEHL, J.　　　　　　　　　　　　　　　　　　　　　　　JUNE 21, 2018

Defendant Metropolitan Direct Property and Casualty Insurance Company ("MetLife") moves this Court to dismiss Plaintiff Carol Kunsman's bad faith claim (Count II) and strike any reference to the Unfair Insurance Practices Act ("UIPA"). Ms. Kunsman's Amended Complaint alleges one count breach of contract and one count bad faith. MetLife's argues Ms. Kunsman's Amended Complaint consists of threadbare allegations supported by mere conclusory statements and should therefore be dismissed. MetLife also argues Ms. Kunsman's reference to the UIPA should be stricken from the Amended Complaint as immaterial and not relevant to Ms. Kunsman's claim. For the reasons that follow, MetLife's Motion to Dismiss will be denied in part and granted in part.

**I. BACKGROUND**

Ms. Kunsman suffered "sudden and accidental direct physical loss" to her insured premises. (ECF Docket No. 8, ¶ 8.) Ms. Kunsman provided MetLife with a timely notice of covered loss and included all available information. (Id. at ¶ 7.) MetLife determined Ms. Kunsman suffered loss to property covered under the policy but did not completely indemnify

Ms. Kunsman for the loss. (Id. at ¶ 9.) MetLife denied coverage for certain aspects of the claim. (Id.)

Specifically, Ms. Kunsman suffered water damage containing human waste and "[MetLife's] estimate of repairs did not include payment for the removal and replacement of all porous material that came into contact with the contaminated water." (Id. at ¶¶ 15, 24.) Ms. Kunsman alleges MetLife's failure to include payment for removal and replacement of all areas affected by contaminated water did not comply with the standards acknowledged by the insurance and construction industries. (Id. at ¶¶ 23-24.) And, MetLife knew that its estimate of repairs and ultimate payment did not comply with the insurance and construction industries for damage caused by contaminated water. (Id. at ¶¶ 25-26.) Ms. Kunsman alleges MetLife grossly underestimated the extent of the damage and grossly underpaid Ms. Kunsman's claim and therefore committed bad faith. (Id. at ¶¶ 26-27.)

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

Also, under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In a Rule 12(f) motion, the court must view the pleadings in the light most favorable to the non-moving party. *Darden-Munsell v. Dutch Maid Logistics*, 2011 WL 3325863, at *4 (W.D. Pa. 2011); *see also Tennis v. Ford Motor Co*, 730 F.Supp.2d 437, 443 (W.D. Pa. 2010) quoting *Natale v. Winthrop Resources Corp.*, 2008 WL 2758238, at *14 (E.D. Pa. 2008) ("Striking some or all of a pleading is [ . . . ] considered a drastic remedy to be resorted to only when required for the purposes of justice."). "Motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* (citing *McInerney v. Moyer Lumber & Hardware*, 244 F.Supp.2d 393, 401 (E.D. Pa. 2002)).

3

## III. ANALYSIS

### a. Bad Faith in violation of 42 Pa.C.S.A. § 8371

Under Pennsylvania bad faith, 42 Pa. Cons. Stat. § 8371, a plaintiff must show: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (1994); *see also Verdetto v. State Farm Fire & Cas. Co.*, 837 F.Supp.2d 480, 484 (M.D. Pa. 2011) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)); *see also Rancosky v Wash. National Insurance Company*, 170 A.3d 364 (Pa. 2017) (adopting the two-pronged test and holding that self-interest or ill will "is not a prerequisite to prevailing in a bad faith claim under Section 8371"). Our Circuit defines bad faith on the part of the insurer as:

> [A]ny frivolous or unfounded refusal to pay proceeds of a policy [that need not] be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Irving v. State Farm Mutual Automobile Insurance Co.*, 2017 WL 4404396, at *3 (E.D. Pa. 2017) (dismissing a bad faith claim as legally insufficient because the complaint did not contain any explanations or descriptions of the alleged bad faith conduct) (quoting *Northwestern Mut. Life Ins. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)).

The damage to Ms. Kunsman's property, water containing human waste, according to insurance and construction standards, requires the removal of all porous materials that come in contact with contaminated water. (ECF Docket No. 8, at ¶¶ 15-18.) Ms. Kunsman alleges that her public adjuster advised MetLife that it was not handling the claim according to the IICRC protocols which requires the removal of all porous material. (Id. at ¶ 18.) MetLife, after

4

becoming aware of the IICRC protocols because of Ms. Kunsman's public adjuster, still did not include payment for the removal and replacement of all porous materials. (Id. at ¶ 24.) Accordingly, MetLife's estimate of repairs did not comply with industry standards for losses related to contaminated water. (Id. at ¶ 26.) MetLife "grossly underestimated the extent of Plaintiff's damage, misidentified the need for certain repairs and failed to include damage that was clear and obvious, to multiple areas of Plaintiff's property as required by the applicable industry standards." (Id. at ¶¶ 27-29.)

Ms. Kunsman alleges that throughout the claims process, Met Life "engaged in a pattern of behavior intended to delay and frustrate the adjustment process." (Id. at ¶ 32.) She also alleges MetLife's conduct – motivated by its desire to reduce its payments to increase its own profitability – placed its interest above its insureds. (Id. at ¶ 35.) Given MetLife's conduct, Ms. Kunsman was "forced to obtain counsel to commence the present action to recover benefits due and owing under the policy of insurance issued by [MetLife] for [her] covered loss" and other damages in connection with her claim. (Id. at ¶ 37.)

MetLife argues Ms. Kunsman's Amended Complaint lacks specificity and contains conclusory allegations. (ECF Docket No. 10, at 13.) Specifically, MetLife alleges Ms. Kunsman's Amended Complaint lacks the necessary factual support to establish the elements of bad faith, "[n]amely, [Ms. Kunsman] failed to plead that MetLife: (1) lacked a reasonable basis for denying benefits; and (2) knew or recklessly disregarded its lack of reasonable basis." (Id.) MetLife cites numerous cases from this Court and our Circuit dismissing bad faith claims where the complaint lacks factual allegations of bad faith. (Id.); *see Myers v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3891968, at *1 (E.D.Pa., 2017); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 506 Fed.Appx. 133 (3d Cir. 2012) ("holding complaint alleging bad faith under § 8371 was

5

legally insufficient because it did not contain any explanations or descriptions of the alleged bad faith conduct.")

MetLife contends Ms. Kunsman's Complaint is "threadbare" because it lacks basic information like: "(1) what type of property was involved in the loss; (2) whether the property is commercial or residential; (3) what type of insurance policy is at issue; (4) what type of loss occurred at the property; and (5) [ ] the cause of the loss." (Id. at 12.) Also, MetLife argues, specifically regarding bad faith, Ms. Kunsman's Amended Complaint does not contain any factual allegations as to: "(1) what MetLife did after receiving the notice of loss; (2) whether MetLife accepted or denied coverage for the loss; (3) whether MetLife paid any amounts on the claim; (4) what was the basis for any payments made by MetLife; (5) whether MetLife paid the undisputed portion of the claim; (6) whether there were any disputed portions of the claim; and (7) if so, what was the nature of the disputed portion of the claim." (Id. at 12.)

In *Irving*, this Court concluded that plaintiff lacked a plausible claim under bad faith because the facts alleged did not shed light on the reasonableness of defendant's actions. *Irving*, 2017 WL 4404396, at *3. Plaintiff's bad faith allegations against defendant – "evaluate Plaintiff's claim fairly; attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim; act promptly and reasonably in settling the claim" – were considered purely conclusory legal statements which lacked the factual support required to make out a claim for bad faith. *Id.* at 2-3. In *Myers*, this Court also dismissed plaintiff's bad faith claim for lack of factual support in the amended complaint. *Myers*, 2017 WL 3891968, at *3. This Court determined plaintiff's claims alleging that defendant "'fail[ed] to properly investigate' her underinsurance claim and failed to make 'reasonable . . . offers' on the claim," consisted of conclusions regarding defendant's conduct but did not set forth any explanations or descriptions

of defendant's actions. *Id.* "Plaintiff's Complaint . . . allege[s] . . . that she filed a claim with Defendant pursuant to her underinsured motorist coverage policy, and that Defendant has denied the claim." *Id.* Accordingly, the allegations in *Irving* and *Myers* did not provide a plausible right to relief under bad faith.

Viewing the facts in the light most favorable to Ms. Kunsman, and separating the factual and legal conclusions, this Court concludes Ms. Kunsman's complaint satisfies the pleading requirements for bad faith. Ms. Kunsman's allegations against MetLife are not purely conclusory legal statements as alleged by MetLife and held in *Irving* and *Myers*. It appears MetLife expects Ms. Kunsman to "prove her case at the pleading stage." (ECF Docket No. 13, at 9.) However, this is clearly not necessary at this stage in the proceedings. The facts alleged by Ms. Kunsman, detailed above, are sufficient to make out a claim for bad faith as the facts address the reasonableness of MetLife's actions. Unlike the plaintiff's in *Irving* and *Myers*, Ms. Kunsman's Complaint contains numerous explanations and descriptions of the alleged bad faith conduct by MetLife – notice of contaminated waste; violation of IICRC protocols; and knowledge that estimated repairs and ultimate payment was not in compliance with IICRC. Accordingly, Ms. Kunsman meets the required showing "that the insurer lacked a reasonable basis for denying benefits; and . . . that the insurer knew or recklessly disregarded its lack of reasonable basis." *Verdetto*, 837 F.Supp.2d at 484.

b. The Unfair Insurance Practices Act under 40 P.S. § 1171.1.

MetLife alleges Ms. Kunsman improperly references violations of the Unfair Insurance Practices Act ("UIPA") under 40 P.S. § 1171.1 without any factual support to suggest MetLife violated the UIPA. (ECF Docket No. 10, at 9-10.) MetLife moves to strike paragraphs 31 through 34 of the Amended Complaint under Fed. R. Civ. P. 12(f). (Id.) While not included as a

claim against MetLife, Ms. Kunsman pleads MetLife's alleged violation of the UIPA as evidence of bad faith conduct. (ECF Docket No. 8., ¶ 34.) According to Ms. Kunsman, "[v]iolations of the Pennsylvania insurance laws and regulations are evidence of bad faith conduct." (ECF Docket No. 8, ¶ 34) (citing *Romano v. Nationwide Mutual Fire Insurance Company*, 435 Pa.Super. 545, 646, A.2d 1228 (1994)).

Before the Pennsylvania Superior Court in *Terletsky* created the two-part standard for evaluating bad faith claims, the court looked to the UIPA and the Unfair Claims Settlement Practices ("UCSP") as guidance for bad faith under § 8371. *Dinner v. United Services Auto. Ass'n Cas. Ins. Co.*, 29 Fed.Appx. 823, 827 (3d Cir. 2002). (finding the District Court did not abuse its discretion by refusing to instruct the jury regarding provisions of the UIPA and the UCSP given the potential for the jury's verdict being influenced by irrelevant matter). But, since *Terietsky*, a violation of the UIPA or the UCSP "is not a *per se* violation of the bad faith standard." *Id.*; *see also Moss Signs, Inc. v. State Auto. Mut. Ins. Co.*, 2008 WL 892032, at *5 (W.D. Pa. 2008) ("allegations that an insurer violated the UIPA and UCSP are irrelevant to a court's consideration of whether the insurer's actions also violated § 8371 because the Pennsylvania Superior Court established a definitive two-prong test for answering that question in *Terletsky* . . ."). This two-pronged test effectively replaced the court's analysis of UIPA or UCSP to determine bad faith.

This Court concludes that any violation of the UIPA is irrelevant in determining whether MetLife acted in bad faith under Pennsylvania law. MetLife argues paragraphs 31 through 34 should be stricken from the Amended Complaint under Rule 12(f); however, this Court will strike only the paragraphs that reference the UIPA – paragraphs 31, 33, and 34. Paragraph 32

does not refer to the UIPA and may help to establish MetLife's bad faith, irrespective of any violation under the UIPA.

## IV. CONCLUSION

In the accompanying Order, this Court denies in part and grants in part Defendant MetLife's Motion to Dismiss. Count II, Bad Faith under 42 Pa.C.S.A. § 8371, will remain as Ms. Kunsman sufficiently pleads a plausible right to relief. However, paragraphs 31, 33, and 34 – all referring to the UIPA – will be stricken from the Amended Complaint under Fed. R. Civ. P. 12(f).